IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOSEPH FRANK FORMICA,

                                    Plaintiff,

        vs.                                    Civil Action No.
                                              5:05-CV-1017 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

FUSCO, BRANDENSTEIN & RADA, P.C.        VICTOR FUSCO, ESQ.
180 Froehlich Farm Boulevard
Woodbury, New York 11797


FOR DEFENDANT:

HON. GLENN T. SUDDABY                   WILLIAM H. PEASE, ESQ.
United States Attorney                  Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York  13261-7198


OFFICE OF GENERAL COUNSEL               BARBARA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278                TOMASINA DIGRIGOLI, ESQ.
                                        Senior Attorney


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiff Joseph Frank Formica, who suffers principally from a lumbar spine condition, has commenced this proceeding seeking judicial review of the denial of his application for disability insurance benefits ("DIB") under the Social Security Act.  In support of his challenge, plaintiff maintains that the Administrative Law Judge ("ALJ") who heard the matter at the agency level and determined that he is not disabled based his conclusion upon a residual functional capacity ("RFC") finding which fails to garner the support of substantial evidence in the record.  Plaintiff also contends that the ALJ failed to develop the record adequately in light of the lack of detailed functional assessments from his various treating physicians, and further that in arriving at his determination the ALJ improperly rejected his testimony regarding the debilitating pain and other limitations which he experiences.

Having carefully reviewed the record now before the court, I find that while the ALJ's assessment regarding plaintiff's credibility is well-supported and properly explained, his RFC determination is not supported by substantial evidence.  In light of this finding, coupled with the ALJ's failure to develop the record by obtaining a detailed functional assessment regarding the plaintiff's limitations, I am setting aside the resulting determination and

remanding the matter to the agency for further consideration.

I.    BACKGROUND

      A.    General Background

      Plaintiff was born on September 19, 1963; at the time of the

administrative hearing in this matter, he was forty years old.  Administrative

Transcript at 241.[1]  During the period at issue, the plaintiff lived with his

fiancee in a one-story house in Liverpool, New York.  AT 240-242.  Formica is

divorced, and has two daughters, neither of whom resides with him.  AT 241-

242.  Plaintiff has a degree in business management, received from Niagara

University.  AT 244-245.

      Plaintiff last worked in February 2003 as a machine operator and

assembler at a manufacturing facility.  AT 245.  Prior to that time plaintiff was

employed in various settings, including as an accounts receivable supervisor,

a customer service representative, home care business manager, and

assistant apparel manager.  AT 71, 249-253.

      B.    Medical Evidence

      Plaintiff alleges disability due to medical conditions affecting his lower

---

[1]      Portions of the administrative transcript of proceedings and evidence before
the agency, Dkt. No. 5, filed by the Commissioner with his answer, will be cited as "AT
___."

back and left shoulder.  AT 79.  Formica claims that he experiences severe

pain in his lower back which radiates "up to [his] shoulders and down to [his]

heels."  AT 70.  Plaintiff states that his condition began to bother him in

November of 2001.  AT 80.

       1.    <u>Treating Sources</u>

Plaintiff initially saw Debra Wolf, a registered physician's assistant

("PA"), on March 25, 2002, for treatment of his left shoulder.  AT 135.  PA

Wolf diagnosed the plaintiff as suffering from left shoulder pain, with

underlying tendinitis and possible subacromial bursitis.  *Id.*  Plaintiff later

complained to PA Wolf of low back pain.  AT 133.  Addressing those

complaints, PA Wolf diagnosed Formica as suffering from lumbar strain with

right radiculitis, and prescribed Naprosyn and Flexeril.  *Id.*  An x-ray of

plaintiff's lumbar spine revealed mild spondylosis at the thoracolumbar

junction, consistent with some degenerative change.  AT 138.

Plaintiff was seen for his back condition by Dr. P. James Newman, an

orthopedist, beginning March 29, 2002.  AT 143.  Dr. Newman found that

plaintiff had full range-of-motion in his shoulder with positive impingement

signs, and diagnosed him as suffering from left shoulder impingement.  *Id.*

On April 19, 2002, Dr. Newman administered a steroid injection into plaintiff's

left subacromial space.  AT 141.  On May 10, 2002, Dr. Newman noted that plaintiff stated that he felt "about 75% improved" and was anxious to lift weights again.  AT 140.

Plaintiff underwent chiropractic treatment for his back pain with Dr. Christopher D'Arcy from February until October of 2003.  AT 173-192.  Dr. D'Arcy's progress notes reflect a general improvement in plaintiff's condition resulting from that treatment.  *Id.*

Plaintiff began treating with Dr. Warren Wulff, an orthopedic surgeon, on March 5, 2003, complaining initially of lower back pain, but additionally noting the existence of severe pain between his shoulder blades, aggravated by neck motion.  AT 146-158.  X-rays of plaintiff's cervical spine taken in March of 2003 revealed "significant degenerative changes and osteophytes at C5-6."  AT 151.  Magnetic resonance imaging ("MRI") testing of the lumbar spine conducted within that same time frame showed a "very small central disc herniation at L4-5 without significant spinal canal stenosis."  AT 147.  Based upon his examination and those x-ray and MRI results, Dr. Wulff diagnosed plaintiff as suffering from a herniated lumbosacral disc and low back pain, AT 147, later opining on March 24, 2004 that he has a permanent marked to severe level of disability.  AT 219.

-5-

Plaintiff was referred by Dr. Wulff to the New York Pain Center, where he received treatment from Dr. Robert L. Tiso and others beginning in May of 2003.  AT 159-164, 210-216, 229-234.  A provocative diskography performed by Dr. Tiso in January of 2004 revealed degenerative change with pain at 4 disc levels, with the most significant concordant pain at L5-L6.  AT 214-216. Dr. Tiso opined that plaintiff was not a candidate for surgery "based on his degenerative disc disease."  AT 216.  Both before and after the diskography, Dr. Tiso treated plaintiff with nerve block injections.  AT 160, 231, 232.

Plaintiff also saw Dr. Seth E. Kronenberg, his general physician, for his back pain from February to November of 2003.  AT 194-207.  On November 25, 2003, Dr. Kronenberg noted that plaintiff had full range-of-motion in the lumbar spine, and that Formica had advised him that he needed no "significant pain medications at this time."  AT 199.

### 2.    Consultative Examiners

In addition to receiving the foregoing treatment for his various physical conditions, plaintiff was examined consultatively on two occasions.  Plaintiff was examined on October 27, 2003, at the request of the agency, by Dr. Kalyani Ganesh, an orthopedic specialist.  AT 168-170.  Based on his evaluation, Dr. Ganesh diagnosed the plaintiff as suffering from chronic low

back pain and a history of a bulging disc.  AT 170.  Dr. Ganesh opined that

plaintiff has a moderate degree of limitation in sitting, standing, walking,

climbing, or using his upper extremities.  *Id.*

Plaintiff also was examined by Dr. Daniel Elstein on June 28, 2004,

apparently at the request of his former employer.  AT 223-225.  Based on his

examination, Dr. Elstein opined that plaintiff was totally disabled.  AT 225.

II.    PROCEDURAL HISTORY

A.    Proceedings Before The Agency

Plaintiff protectively filed an application for Social Security disability

benefits on September 17, 2003.  AT 54-56.  That application was denied on

December 3, 2003.  AT 32-36.

At plaintiff's request, a hearing was conducted on August 3, 2004

before ALJ Randall W. Moon to address plaintiff's claim for benefits.  AT 235-

279.  Plaintiff appeared at that hearing, accompanied by a non-attorney

representative.  *See id.*

Following the hearing, ALJ Moon issued a decision dated December

12, 2004.  AT 16-26.  In his decision ALJ Moon conducted a *de novo* review

of the record, applying the now-familiar, five-step sequential test for

determining disability under the Act, finding at step one that plaintiff had not

engaged in substantial gainful activity since his alleged disability onset date.
AT 20.  Proceeding to the next two steps, ALJ Moon concluded that the
evidence supported a finding that plaintiff suffers from severe degenerative
disc disease of the lumbar spine, regarded by the ALJ as sufficiently severe
as to satisfy the relatively modest step two requirement, but further found that
the condition did not meet or equal any of the listed, presumptively disabling
conditions set forth in the pertinent regulations, 20 C.F.R. Pt. 404, Subpt. P,
App. 1.  AT 21.

After reviewing the medical evidence in the record, including opinions
from both treating and examining sources, bearing upon plaintiff's physical
limitations, ALJ Moon next concluded that despite his medical conditions
plaintiff retains the RFC to perform a full range of sedentary work.  AT 25.  In
arriving at the RFC determination, ALJ Moon rejected plaintiff's claims of
disabling pain as not fully credible, particularly in view of plaintiff's activities
and conservative course of treatment.  AT 24.

The ALJ then concluded, based on the testimony of a vocational expert,
that plaintiff is able to perform his past relevant work, which included
positions as an accounts receivable supervisor, home care business
manager, customer service representative, and assistant apparel manager

and, accordingly, found that plaintiff is not disabled.  AT 25.

ALJ Moon's opinion became a final determination of the agency when, on June 17, 2005, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 5-8.

B.   This Action

Plaintiff commenced this action on August 11, 2005.  Dkt. No. 1.  Issue was subsequently joined by the Commissioner's filing of an answer, together with an administrative transcript of the proceedings and evidence before the agency on December 6, 2005.  Dkt. Nos. 4, 5.  With the filing of plaintiff's brief on February 22, 2006, Dkt. No. 8, a brief on behalf of the Commissioner on April 6, 2006, Dkt. No. 9, and reply addendum on behalf of the plaintiff on April 14, 2006, Dkt. No. 10, this matter is ripe for determination, and has been referred to me, on consent of the parties, for a final determination pursuant to 28 U.S.C. § 636(c).[2]  Dkt. No. 12.

III.   DISCUSSION

_____A.   Scope of Review

---

[2]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427

(1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.

Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).

To be substantial, there must be "'more than a mere scintilla'" of evidence

scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp. 2d

at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court considers

the whole record, examining the evidence from both sides, because an

analysis of the substantiality of the evidence must also include that which

detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera

Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have

been applied, and/or that substantial evidence does not support the agency's

determination, the agency's decision should be reversed.  42 U.S.C. § 405(g);

*see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand

the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g),

particularly if deemed necessary to allow the ALJ to develop a full and fair

record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148

(citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand

pursuant to sentence six of section 405(g) is warranted if new,

non-cumulative evidence proffered to the district court should be considered

at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*,

940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is

appropriate when there is "persuasive proof of disability" in the record and it

would serve no useful purpose to remand the matter for further proceedings

before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R.*

*Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and*

*Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

>       B.      Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   In addition,

the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his

or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence in this Case

In support of his challenge to the agency's determination, plaintiff raises several arguments, contending that in finding no disability, the ALJ improperly 1) determined the RFC; 2) failed to develop the record; 3) and discounted his subjective complaints of disabling pain.

1.    RFC

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. §

404.1545(a).  An RFC determination is informed by consideration of a

claimant's physical abilities, mental abilities, symptomology, including pain,

and other limitations which could interfere with work activities on a regular

and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess

plaintiff's exertional capabilities, addressing his or her ability to sit, stand,

walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.  Nonexertional

limitations or impairments, including impairments which result in postural and

manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a;

*see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an

RFC determination, an ALJ must specify those functions which the claimant is

capable of performing; conclusory statements concerning his or her

capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing

*Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand

judicial scrutiny only if there is substantial evidence in the record to support

each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990));

*Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Plaintiff contends that the RFC determination is not supported by

substantial evidence.  *See* Dkt. No. 8 at 11-17.  In his decision, ALJ Moon

found that plaintiff retained the RFC to perform sedentary work.[3]  AT 25.  In

arriving at this determination, the ALJ reviewed the available medical

evidence in some detail.  AT 21-24.  The ALJ then discussed portions of

plaintiff's hearing testimony, describing his daily activities, concluding that the

extent of his activities "indicate[s] that the claimant is able to do sedentary

work."  AT 24.  In his decision, the ALJ acknowledged that Dr. Elstein had

recorded a finding that plaintiff was totally disabled, additionally noting that

Dr. Elstein suggested that a functional capacity examination would be helpful.

AT 25.  The ALJ also made known his view that Dr. Elstein's suggestion

"indicate[d] that Dr. Elstein was not thoroughly convinced that the claimant

could do no work."  *Id.*  The ALJ also pointed out that "other treating

physicians discussed vocation[al] rehabilitation with the claimant and stated

---

[3]     Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small
> tools.  Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in carrying out job
> duties.  Jobs are sedentary if walking and standing are required occasionally
> and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, sedentary work generally involves periods of
standing or walking for a total of two hours in an eight-hour work day, with sitting up to a
total of approximately six hours in a similar period.  *See* S.S.R. 83-10, 1983 WL 31251, at
*5 (S.S.A. 1983).

that he . . . could do sedentary work." *Id.* The ALJ stated that he "agrees and has reduced the claimant's [RFC designation] to sedentary work." *Id.*

While containing a substantial volume of medical evidence, the record which was before the ALJ is woefully lacking in specifics regarding the impact of plaintiff's conditions upon his ability to perform work-related functions. Critically, the specific evidence cited by the ALJ fails to demonstrate whether and to what extent plaintiff is capable of performing many of the facets of sedentary work. Moreover, the ALJ erred by failing to specify those functions which plaintiff is capable of performing; instead he provided only a conclusory statement as to plaintiff's capabilities, thus failing to fulfill his obligation to affix a proper RFC and provide illumination regarding his findings. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).

I note further that contrary to the ALJ's "agree[ment]" with plaintiff's treating physicians, to whom he attributes the opinion that plaintiff can perform sedentary work, the record provides no indication that any treating physician has even specifically opined that plaintiff can perform sedentary work, and the ALJ does not identify to which specific physicians he refers. Even if a treating physician had opined that plaintiff is able to perform sedentary work, it is the ALJ's duty to determine a claimant's RFC, and not

-17-

simply to "agree[]" with a physician's opinion.  *See* 20 C.F.R. § 404.1546(c)

("If your case is at the administrative law judge hearing level . . . the

administrative law judge . . . is responsible for assessing your residual

functional capacity.").

The Commissioner argues that the ALJ's RFC determination is

supported by Dr. Wulff's finding that plaintiff was able to sit comfortably and

walk independently during an office visit, and Dr. Ganesh's recorded

observations that plaintiff was limited moderately in his abilities to sit, stand,

walk, climb, or use his upper extremities.  Dkt. No. 9 at 15-16; AT 170, 221.

The ALJ, however, did not specifically state that he relied on these findings in

determining plaintiff's RFC.  Moreover, even had the ALJ specifically stated

that he was relying upon these findings, this would be insufficient since as a

layperson and notwithstanding his considerable and constant exposure to

medical evidence, the ALJ should not have drawn the necessary inference

that plaintiff can perform the exertional requirements of sedentary work.  *See*

*Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (finding that consultative

examiner's use of the terms "moderate" and "mild," without additional

information, did not permit the ALJ to make the necessary inference that the

plaintiff can perform the exertional requirements of sedentary work) (citing

-18-

*Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1988)).

In light of the foregoing, I find that the ALJ's RFC determination, upon which his finding of no disability hinged, is not supported by substantial evidence.

### 2.    Development of the Record

In an extension of his RFC argument, plaintiff in essence contends that the ALJ erred by failing to obtain detailed assessments describing his specific functional abilities from certain treating sources.  Dkt. No. 8 at 14-16.

When confronted with a claim for social security benefits, an ALJ is tasked by statute with the responsibility to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, and additionally "to gather such information for a longer period if there is [reason] to believe that the information is [necessary] to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B), as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).

The obligation to develop the record further includes recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the

claimant is disabled. *Perez*, 77 F.3d at 47 (citing 20 C.F.R. § 404.1512(e)).

This is not a mere salutary requirement; the opinion of a treating physician

plays a central role in evaluating Social Security claims.  "[A] treating source's

opinion on the issue(s) of the nature and severity of [a claimant's]

impairments" will be given "controlling weight" if the opinion is "well supported

by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20

C.F.R. § 404.1527(d)(2)).

Moreover, the duty to develop the record faithfully exists even in

instances where a claimant is represented, owing from the fact that such

proceedings are not viewed as adversarial in nature. *Gecevic v. Sec'y of

Health and Human Servs.*, 882 F. Supp. 278, 287 (E.D.N.Y. 1995).  In this

case, plaintiff was accompanied at the hearing by Brenda Anderson, a non-

attorney representative. *See* AT 10, 237.  Despite this fact, the ALJ was

duty-bound to develop and fill any critical voids in the available evidence.

Plaintiff argues that the ALJ should have recontacted his treating

physicians, Dr. Tiso and Dr. Kronenberg, in order to acquire detailed

assessments describing his specific functional abilities and that he should

have contacted Dr. Wulff as well for this purpose.  Dkt. No. 8 at 15-16.

Defendant argues that the ALJ was not required to seek assessments from

Dr. Tiso and Dr. Kronenberg in light of their previous refusals to provide such

assessments.  Dkt. No. 9 at 17-18.  In support of his position in this regard,

defendant cites to the regulation in which the agency notes, "[w]e may not

seek additional evidence or clarification from a medical source when we know

from past experience that the source either cannot or will not provide the

necessary findings."  20 C.F.R. § 404.1512(e)(2).

The record shows that on October 23, 2003, Dr. Tiso provided a written

statement in which he declined to provide an assessment of plaintiff's degree

of disability, recommending instead that plaintiff's "primary physician be

involved with [the] disability assessment."  AT 159.  Similarly, on December

18, 2003, Dr. Kronenberg stated his disinclination to complete an assessment

form regarding plaintiff's ability to do work-related physical activities, writing

"[p]lease forward to Dr. Tiso" on the form.  AT 196.  In light of these

physicians' clear unwillingness to provide detailed functional assessments, I

find that the ALJ was under no duty to recontact Dr. Tiso and Dr. Kronenberg.

*See* 20 C.F.R. § 404.1512(e)(2).

The circumstances now presented regarding Dr. Wulff differ from those

pertaining to Drs. Tiso and Kronenberg.  While the record contains treatment

notes from Dr. Wulff, there is no detailed functional assessment included

among his records.  Moreover, there is no clear indication that the ALJ

contacted Dr. Wulff in order to obtain such an assessment, and defendant

provides no citation to any document showing that the ALJ attempted such

contact.  Dr. Wulff's opinion is of particular import since he is one of plaintiff's

treating physicians; as such, his opinion is entitled to controlling weight as

long as it is well supported and consistent with other substantial evidence.

See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  This is particularly crucial in

light of the lack of assessments in the record describing plaintiff's specific

functional abilities from any treating physician in the record.[4]  Accordingly, I

find that the ALJ had a duty to contact Dr. Wulff in order to obtain a more

detailed opinion.  *See* 20 C.F.R. § 404.1512(e)(1) ("We may . . . request[] . . .

a more detailed report from your medical source, including your treating

source . . . .").  I further find that the ALJ failed to fulfill this duty by making no

such contact.

It may be argued that the ALJ's duty was fulfilled by the fact that plaintiff

_____

[4]        The record contains only one RFC assessment describing plaintiff's specific
functional abilities; that assessment was completed by T. Burke, a non-physician disability
examiner who did not treat or examine plaintiff.  AT 118-122.  The ALJ neither discussed
or relied upon this assessment in arriving at his finding of no disability.

underwent a consultative examination by Dr. Ganesh, at the request of the agency.  *See* 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.")  As was previously discussed, however, the ALJ was not permitted to infer, without additional information, that plaintiff was able to perform sedentary work based on Dr. Ganesh's vague findings.  Moreover, the regulations provide that generally a consultative examination will not be requested "until we have made every reasonable effort to obtain evidence from your own medical sources."  20 C.F.R. § 404.1512(f).  Here, the record provides no indication that every reasonable effort was made to obtain a detailed assessment from Dr. Wulff.

In light of the foregoing, I conclude that the ALJ's determination is fatally flawed by virtue of his failure to develop the record by seeking information from plaintiff's treating health care provider, Dr. Wulff.

### 3.    Credibility

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a),

(d).  When examining the issue of pain, however, the ALJ is not required to

blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain.  *See Mimms v. Heckler,* 750

F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion

the ALJ must consider a variety of factors which ordinarily would be relevant

on the issue of credibility in any context, including the claimant's credibility,

his or her motivation, and the medical evidence in the record.  *See Sweatman*

*v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998)

(Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing

so, the ALJ must reach an independent judgment concerning the actual

extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment which

one could reasonably anticipate would produce such pain, it is entitled to

considerable weight.[5]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§

---

[5]      In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the existence of
a medical impairment which would reasonably be expected to produce the pain or other
symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount

subjective testimony may not be disturbed on court review.  *Aponte v.
Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).


It may be, as plaintiff asserts, that he does suffer from some degree of
discomfort as a result of his impairments.  The fact that he suffers from
discomfort, however, does not automatically qualify him as disabled, since
"disability requires more than mere inability to work without pain." *Dumas v.
Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

As can be seen from his decision, the ALJ acknowledged the existence
of a severe impairment and plaintiff's accompanying allegations of pain and
limitations, but found that his testimony in this regard was "not fully credible"
based principally on plaintiff's activities and conservative course of treatment.
AT 24.  In so finding, the ALJ reviewed the medical evidence in some detail
and discussed the relevant factors set forth in the regulations, 20 C.F.R. §§
404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi), including the location, duration,
frequency and intensity of any symptoms; precipitating and aggravating
factors; medications taken; other treatment received; and any other measures
taken to relieve symptoms.  AT 21-24.

The ALJ's rejection of plaintiff's subjective statements regarding his

-26-

limitations is also supported by plaintiff's own testimony, which showed his

ability to perform basic daily functions, including preparing breakfast, taking

walks, reading the newspaper, and watching television.  AT 24, 258-259.

The ALJ noted that by his own estimate, plaintiff walks approximately a total

of two hours in an eight-hour period during a typical day.  AT 24, 263.  The

ALJ also noted that plaintiff stated that he drives three to four times during the

week to visit doctors or his parents, and to pick up his children.  AT 24, 243.

The ALJ further observed that plaintiff had recently ridden in a van for six

hours, though stopping every forty-five to sixty minutes, in order to attend a

car race at which he stood for "most" of the three-and-a-half hour race.  AT

24, 262-263.

In light of the foregoing circumstances, I find that the ALJ's skepticism

regarding the degree of pain and limitations experienced by plaintiff was both

properly explained, and is supported by substantial evidence on the record.[6]

---

[6]    To the extent that plaintiff challenges the hypothetical questions posed to the
vocational expert at the hearing, Dkt. No. 8 at 24, on remand, if it is determined that a new
hearing is necessary, the ALJ will be required to obtain the opinion of a vocational expert
in the event of a finding that plaintiff's nonexertional limitations present significant
restrictions upon his ability to perform work-related functions.  *See Bapp v. Bowen*, 802
F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments
"significantly limit the range of work permitted by his exertional limitations" the application
of the grids is inappropriate).   The hypothetical questions posed to the vocational expert
must present the full extent of plaintiff's impairments.  *Colon v. Comm'r of Soc. Sec.*, No.
6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.) (noting that
hypothetical questions must present the full extent of a claimant's impairments to provide a

IV.    <u>SUMMARY AND ORDER</u>

In arriving at his determination of no disability, the ALJ failed to acquire sufficient information, absent from the record, to support his RFC determination.  The ALJ further failed to develop the record, and should have contacted plaintiff's treating source, Dr. Wulff, for a more detailed assessment describing plaintiff's specific functional abilities.  While these errors are fatal to the resulting finding of no disability, I note that the ALJ properly determined plaintiff's credibility, basing his credibility determination on substantial evidence.

---

sound basis for a vocational expert's testimony) (citation omitted).
I also note that while plaintiff argues the ALJ misquoted portions of his testimony, such as his ability to prepare dinner and whether he wears a back brace, Dkt. No. 8 at 19-21, even if the ALJ did in fact mischaracterize such testimony, that shortcoming was not fatal.  The ALJ's credibility determination is supported by his discussion of the factors as set forth in the regulations, and by substantial evidence.

Based on the foregoing, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings is

GRANTED, the Commissioner's determination of no disability VACATED, and

the matter REMANDED to the agency for further consideration pursuant to

sentence four of 42 U.S.C. § 405(g).


Dated:      September 6, 2007
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge